IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:12-CR-067 |
| ) | |
| LARRY SHANE MORGAN ) | |

**MEMORANDUM AND ORDER**

The defendant is charged in six counts of an eight-count Superseding Indictment. Count One charges him with robbing the Stop and Go Market on June 28, 2012. Count Three charges him with robbing the Greeneville Federal Bank on July 2, 2012. The defendant was arrested on July 3, and his truck was searched - pursuant to a search warrant - on July 5.

The defendant has filed two suppression motions. He argues that his arrest (and the subsequent search of his person) were unlawful [doc. 86], and that the warrant to search his truck was not supported by probable cause [doc. 87]. Now before the court are the October 2, 2012 reports and recommendations of Chief United States Magistrate Judge Dennis H. Inman [docs. 124, 129], recommending that the defendant's motions be denied. The defendant objects [docs. 143, 144] to the reports and recommendations, and the government has responded [docs. 152, 153] to the objections. A transcript of the suppression hearing has been filed [doc. 140] and has been carefully reviewed by the court.

The district court is both statutorily and constitutionally required to conduct a *de novo* review of a magistrate judge's report and recommendation. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). The district court need not provide *de novo* review where objections to a report and recommendation are frivolous, conclusive, or general. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

## I.

### *Relevant Background*

Witnesses reported that the bank was robbed by a man. The getaway vehicle was described as a newer-model, black, full-size GMC or Chevrolet truck with passenger-side damage. On July 2, the Greeneville Police Department put out a "be on the lookout" ("BOLO") for that truck.

On the morning of July 3, Detective Pat Hankins and Captain Beth Dyke were contacted by another officer who had observed a truck matching the BOLO description, parked at the Fox Motel in Johnson City. Detective Hankins checked the license plate number and learned that the truck was registered to the defendant. The detective obtained and reviewed a photograph of the defendant. Detective Hankins also learned that the defendant was a felon, and that the truck had recently been in an accident, sustaining passenger-side damage.

Later on the morning of July 3, Detective Hankins and Captain Dyke went to the Fox Motel to investigate further. Detective Hankins drove an unmarked white sport utility vehicle ("SUV").

Detective Hankins encountered the defendant, who was walking down a flight of stairs carrying a plastic bag. When asked for his name, the defendant gave one other than his own. When asked for identification, the defendant stated that his identification was in his vehicle. When asked if the black truck was his, the defendant denied ownership and indicated instead that his vehicle was in the area where Detective Hankins had parked. Detective Hankins asked if he could accompany the defendant to the defendant's vehicle to check his identification. The defendant agreed. As the two men walked across the parking lot, Detective Hankins again asked the defendant which vehicle was his. The defendant pointed to Detective Hankins' SUV. Almost immediately thereafter, the defendant tried to flee. He was subdued and arrested by Detective Hankins and Captain Dyke. Underneath the defendant was the shopping bag, visibly containing a large amount of cash.

On July 5, FBI Special Agent Casey Helm submitted an application and affidavit for a warrant to search the truck. In part, the affidavit recited that codefendant Kaylen Butcher had, on July 3, told authorities that the defendant committed the bank robbery. The application was approved by the magistrate judge.

## II.

### *Arrest and Search of Defendant's Person*

The defendant's motion contends that "the arresting officers did not have either reasonable suspicion or probable cause to pursue and stop Mr. Morgan in the first place, and therefore, the subsequent arrest and search of his person and personal belongings was illegal. . . . [T]he officers were acting simply on a hunch that Mr. Morgan could be connected to the bank robbery . . . ." [Doc. 86, p.1]. The defendant is incorrect.

If an officer has reasonable suspicion that a person may be involved in criminal activity, the officer is permitted to briefly stop that person and investigate further. *See generally Terry v. Ohio*, 392 U.S. 1 (1968). Whether an officer had a reasonable, articulable suspicion must be determined under a totality of the circumstances analysis. *See United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001). "[D]ue weight must be given, not to [an officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27; *accord Smith*, 263 F.3d at 588. Evidence offered in support of reasonable suspicion must be considered under "a common sense approach, as understood by those in the field of law enforcement." *Smith*, 263 F.3d at 588.

Detective Hankins in this case had reasonable suspicion that the defendant was the owner of a truck closely matching the description of one involved in a bank robbery. The detective was therefore entitled to briefly stop the defendant and investigate.

4

"Asking questions is an essential part of police investigations. In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt County*, 542 U.S. 177, 185 (2004). Detective Hankins' requests for name and identification were reasonably related in scope to the circumstances justifying the stop in this case. Although the detective was already familiar with the defendant's photograph and the registration of the truck, there was nothing wrong with confirming that he was indeed speaking with the truck's owner, Larry Shane Morgan.

From that point forward, things went rapidly downhill for the defendant. He gave a false name. He denied ownership of the truck. Detective Hankins knew that both statements were false, and his reasonable suspicion was amplifying with each of the defendant's missteps. The defendant then attempted to flee. He was detained, and a bag of cash was found under his person.

The investigative stop in this case was reasonable at its inception. The defendant's own misstatements and misconduct progressively increased the officers' reasonable suspicion. The defendant's position before this court - that reasonable suspicion was lacking - is without merit. His first suppression motion will be denied.

### III.

*Search Warrant*

The defendant next complains that the search warrant "detail[ed] '[t]he robber, <u>believed to be</u> LARRY SHANE MORGAN' without detailing why the affiant believes this, other than the reliance on a statement during an interview by law enforcement of Codefendant Kaylen Butcher wherein she apparently points the finger at Mr. Morgan." [Doc. 87, p.1] (emphases in original). The defendant argues that Butcher is unreliable, and that officers knew that. At the suppression hearing, defense counsel confirmed the defendant's position that "the affidavit for the search warrant, take out what Ms. Butcher said, you know, that's what we're looking at, what we would say that does not establish probable cause, you know, for the search of the truck." [Doc. 140, p.23].

The undersigned is troubled by the degree to which the defense has misrepresented the contents of Special Agent Helms' affidavit. The defendant's failure to move for a *Franks* hearing is also noted. Nonetheless, in the interest of judicial economy, the court will (as did the magistrate) consider the application and affidavit in the absence of the paragraph referring to Ms. Butcher. The remainder of the affidavit sets forth in material part:

6

> 1. The Stop and Go Market robbers were seen fleeing in a dark, full-size pickup truck.
>
> 2. The Greeneville Federal Bank robber was seen fleeing in a dark Chevrolet pickup truck with passenger-side damage.
>
> 3. A vehicle matching the above description was spotted at the Fox Motel on July 3.
>
> 4. While officers were at the motel investigating, the defendant exited a room and headed in the direction of the truck.
>
> 5. The truck is registered to the defendant, but he denied ownership.
>
> 6. Officers attempted to interview the defendant, but he was uncooperative. The defendant resisted, fled, and was apprehended. In the flight and struggle, the defendant dropped a bag containing a large quantity of cash.

[Doc. 113, ex.1].

In sum, the affidavit states that: the defendant is the registered owner of a truck matching the description of one used in two recent robberies; the defendant denies ownership of that truck; the defendant was highly uncooperative with investigating officers; and the defendant was arrested in possession of a bag full of cash. These facts amply set forth probable cause for issuance of a warrant to search the truck. The affidavit's paragraph pertaining to Ms. Butcher adds to the probable causes analysis, but is unnecessary. The defendant's suppression motion will be denied.

*IV.*

*Conclusion*

For the reasons provided herein, the court **ADOPTS** the findings of fact and conclusions of law set out in Magistrate Judge Inman's reports and recommendations [docs. 124, 129]. It is **ORDERED** that the defendant's motions to suppress [docs. 86, 87] are **DENIED**, and his objections [docs. 143, 144] are **OVERRULED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge